**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO**

Civil Action No.

PROMETHEUS DOS, INC.,

       Plaintiff,

v.

ANDY PHAM,

       Defendant

---

**VERIFIED COMPLAINT**

---

      Plaintiff Prometheus Dos, Inc., by and through counsel, Anthony L. Leffert of Robinson Waters & O'Dorisio, P.C., hereby files its Verified Complaint and Jury Demand and claims for relief against Defendant Andy Pham, and states as follows:

**PARTIES, JURISDICTION, AND VENUE**

      1.     Plaintiff Prometheus Dos, Inc., is a Nevada Corporation with its principal place of business at 2119 Wilbanks Circle, Henderson, Nevada 89012.

      2.     Defendant Andy Pham has admitted in sworn deposition testimony that he is a resident of the State of Idaho with an address of 1374 E. Commander Street, Meridian, Idaho 83646. Defendant Pham is a citizen of the State of Idaho and is domiciled there.

      3.     This Court has subject matter jurisdiction over these claims under 28 U.S.C. § 1332, because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Personal jurisdiction over the Defendant is proper because Defendant committed tortious actions underlying this suit in Colorado.

5. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in Colorado.

## I.
## GENERAL ALLEGATIONS

6. Dr. James Kalhorn is a dentist in Colorado Springs.

7. Defendant is a real estate developer in Las Vegas, Nevada, but resides in Idaho.

8. In December 2015, Dr. Kalhorn was approached by an acquaintance who introduced him to Anthony Zogheib and Csaba Meiszburger (the "Middlemen").

9. The Middlemen proposed the following investment to Dr. Kalhorn:

   a. The Middlemen were silent owners of Caballos de Oro Estates LLC ("Caballos"). Defendant was their front-man and was the manager of Caballos.

   b. Caballos owned a five-acre piece of undeveloped property in Clark County, Nevada (the "Property").

   c. The Middlemen told Dr. Kalhorn they had various debts that needed to be paid. They needed a creditworthy investor to pay off their debts, and they would pay him back, plus a ten percent fee, within sixty days. If they could not pay after sixty days, Dr. Kalhorn would own the land. Dr. Kalhorn agreed to the arrangement.

10. Upon information and belief, the Middlemen used the Nevada Secretary of State website to remove Defendant as the manager of Caballos and replaced his name with Dr.

2

Kalhorn's. Dr. Kalhorn believes Defendant received notice of the change from the Nevada Secretary of State.

11. The Middlemen convinced Dr. Kalhorn that he had become the sole manager and member of Caballos. Dr. Kalhorn also obtained an opinion letter from a local attorney, Rory Vohwinkle, stating that Dr. Kalhorn was the rightful managing member of Caballos.

12. Dr. Kalhorn then obtained two loans for $1.2 million and $550,000, using the Property as security. Dr. Kalhorn personally guaranteed each loan.

13. The Middlemen never repaid Dr. Kalhorn, and so he began taking steps to develop the property himself.

14. In mid-2016, Dr. Kalhorn conveyed the Property to Prometheus and Atlas Real Estate Development, LLC, a new company he had formed to hold the Property.

15. At the end of 2016, Defendant first sent a letter to Dr. Kalhorn claiming to be the rightful owner of the Property and the rightful manager of Caballos.

16. A separate action is pending in Nevada to clear title to the Property.

17. Upon information and belief, Defendant was involved in the Middlemen's scheme to defraud Dr. Kalhorn. In short, the Middlemen convinced Dr. Kalhorn to pay off various debts and personally guarantee separate loans. Then they claimed Dr. Kalhorn has no interest in Caballos or the Property, leaving him solely responsible for the loans.

18. Defendant is now engaged in a campaign to defame Dr. Kalhorn.

19. Defendant was the source for an inaccurate story reported in the Las Vegas Review-Journal, published Sunday, May 20, 2018, which characterizes Dr. Kalhorn as a "fraudster" and portrays Defendant as the victim of fraud committed by Dr. Kalhorn.

20. On May 28, 2018, in the building where Dr. Kalhorn's dental office is located, Defendant handed out copies of the Review-Journal article along with copies of a flyer calling Dr. Kalhorn a "Corporate Land Thief":



21. Defendant's flyer also directed recipients to a website titled StopJamesKalhorn.com. As of June 29, 2018, the front page of the website was topped with a photo of Dr. Kalhorn captioned "JAMES KALHORN'S MUGSHOT" and text reading, "WANTED: STEALING BY DECEIT AND CROSSING STATE LINE TO COMMIT GRAND LARCENY":

4



22. As of July 2, 2018, the website had been edited in minor respects. The banner now reads: "Dentist in Colorado Springs wanted: STEALING BY DECEIT AND GRAND LARCENY":



23. The updated webpage is supplemented with a photo of Defendant holding the flyer in front of Dr. Kalhorn's dental practice:



Criminal Identity Theft Ring

Jade Dental Professionals located at 711 N Tejon St #200, Colorado Springs, CO 80903 Tel: (719) 633-0770
Hiding behind fake reviews of dental professional respectability, convicted insurance fraud artist, James Kalhorn DDS crossed state lines to steal $5 million in real estate.

24. A previous version of the website was headlined: "Accomplices of James Kalhorn" followed by a photo of an FBI "Wanted" poster:





25. Below the banner, the content is titled "HOW TO EASILY STEAL $5 MILLION DOLLARS WITHOUT A GUN."

26. The website, among other things,

    a. Accuses "the entire City Council of Las Vegas, including the Mayor of "unwittingly . . . assist[ing]" "a total swindler."

6

    b. Accuses Dr. Kalhorn of being a "land thief" and "corporate identity thief" and of committing "corporate identity fraud."

    c. Asserts as a fact that Dr. Kalhorn engineered a sophisticated scheme to steal Defendant's property:

> Dr. Kalhorn figured out that instead of going into a bank with a machine gun and robbing ten thousand dollars and maybe getting himself killed by police in the process, that he could, safely from his own home, steal millions of dollars without moving much more than his index finger, and no one would be the wiser. He's been working on his crime since New Year's Eve (December 31st, 2015), and has stolen millions over that approximately 16-month timeframe, unknown to anyone, even the Commissioners (including the Mayor) of the City of Las Vegas. . . .
>
> James Kalhorn used his computer to visit the Nevada Secretary of State's website, and changed the name of the Manager of Caballos, from Andy Pham, into James' Kalhorn's own
>
> * * *
>
> Once James Kalhorn had the "keys" on the Nevada Secretary of State web site to "officially" control the Management of Caballos, he knew just what to do.
>
> . . . He immediately zeroed in on one of Caballos's properties, a $5 million dollar 5-acre piece of land . . . which Caballos owned free and clear of debt.
>
> Mr. Kalhorn contacted a lender, and since the property had zero debt, he borrowed approximately $1.75 million dollars on the property . . .
>
> * * *
>
> . . . [Mr. Kalhorn] hired a real estate brokerage firm in late December 2016 to sell the property for $2.6 million dollars, so he could add millions more from this new sale, to the

millions he already made with his fraudulent borrowing scheme.

27. Defendant created an additional website entitled jamespaulkalhornddds.com, which is hosted by GoDaddy. Contained in this website are additional defamatory, libelous and slanderous publications regarding James Kalhorn. Among those, this website makes the following libelous and defamatory statements:



- Mr. Kalhorn figured out that instead of going into a bank with a machine gun and robbing ten thousand dollars and maybe getting himself killed by police in the process, that he could, safely from his own home, steal millions of dollars without moving much more than his index finger, and no one would be the wiser.

- James Kalhorn used his computer to visit the Nevada Secretary of State's website, and changed the name of the Manager of Caballos, from Andy Pham, into James' Kalhorn's own name. Again, zero proof was required to make this change, and no backup verification was ever needed or requested by the State.

This website contains a phone number listed for more information, which rings directly to the Defendant's office and his personal assistant.

28. Yvonne Serna, a woman who works across the street from Dr. Kalhorn's office, encountered Defendant handing out these flyers stapled to copies of the orchestrated newspaper article. Defendant told Ms. Serna that

    a. Dr. Kalhorn stole the property across the street from Defendant by forging documents and filing them with the Nevada Secretary of State; and

    b. Dr. Kalhorn was a thief and a liar.

29. David Zallar received a copy of the flyer and reviewed website content. As a result, Mr. Zallar has decided not to invest $250,000 into Plaintiff who was the largest shareholder of Xamay Importers, Inc. doing business as Alma de Agave. At the time he received the flyer and viewed the website he resided in and was located in Colorado Springs, Colorado.

30. Matthias Bober was made aware of Defendant's websites and viewed the content. As a result, Mr. Bober has decided not to invest $350,000-400,000 into Plaintiff who was the largest shareholder of Xamay Importers, Inc., doing business as Alma de Agave. At the time he reviewed the website he resided in and was located in Colorado Springs, Colorado.

31. All of Defendant's statements about Dr. Kalhorn are false:

    a. Dr. Kalhorn is not wanted by law enforcement for theft, grand larceny, or any other crime.

    b. Dr. Kalhorn did not concoct a scheme to steal Defendant's property using the Nevada Secretary of State's website in lieu of robbing a bank.

   c. Dr. Kalhorn did not file forged documents with the Nevada Secretary of State.

   d. Dr. Kalhorn is not an identity thief and has not committed identity theft.

   e. Dr. Kalhorn is not a "corporate land thief" and did not steal Defendant's land.

   f. Dr. Kalhorn is not a "fraudster" and did not defraud Defendant.

## II.
## FIRST CLAIM FOR RELIEF
**Tortious Interference with Prospective Business Advantage – Investors**

32. All of the previous allegations are incorporated as if fully set forth here.

33. Plaintiff, Prometheus Dos, Inc. had prospective business relationships with investors to invest in Plaintiff who would invest the money in Xamay Importers, LLC, doing business as Alma de Agave.

34. Upon information and belief, Defendant knew about these prospective business relationships with investors.

35. Defendant caused the potential investors not to form contractual relationships with and invest in Plaintiff Prometheus Dos, Inc. who has suffered damages as a result of Defendant's improper interference.

### PRAYER FOR RELIEF

Plaintiff prays the Court will enter judgment in his favor and award him damages in an amount to be proven at trial, prejudgment and post-judgment interest, his costs and attorney's fees, and any other relief the Court deems equitable and proper.

## Verification

STATE OF  _Colorado_            )
                                )
COUNTY OF _El Paso_             )

I, James Kalhorn, verify that the foregoing is true and correct to the best of my knowledge and belief.

_____
James Kalhorn

Acknowledged, subscribed, and sworn to before me this 20th day of March, 2020.

_4-1-2020_                      _____
My commission expires           Notary Public

```
DEBORAH R. SORENSEN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20044011534
My Commission Expires 04-01-2020
```

Respectfully submitted this 30th day of March, 2020.

                                    ROBINSON WATERS & O'DORISIO, P.C.

                                    */s/Anthony L. Leffert*
                                    Anthony L. Leffert, #12375
                                    Elizabeth Michaels, #50200
                                    1099 18th Street, Suite 2600
                                    Denver, CO 80202
                                    (303) 297-2600
                                    (303) 297-2750 (f)
                                    aleffert@rwolaw.com
                                    emichaels@rwolaw.com

                                    *Attorneys for Plaintiff Prometheus Dos, Inc.*

<u>Plaintiff's Address</u>:
2119 Wilbanks Circle
Henderson, Nevada 89012